**Constance Pratt**,

        Plaintiff,

v.

**Pitt County Department of Social Services**, et al.,

        Defendants.

**Order & Memorandum & Recommendation**

    Plaintiff Constance Pratt asks the court to allow her to proceed against Defendants Pitt Country Department of Social Services ("PCDSS"), Keisha Adams, Retha Albriton, Jane Dawson, Margaret Dixon, and Sofia Ellis without paying the required filing fee or other costs normally associated with a civil lawsuit (otherwise known as proceeding "*in forma pauperis*" or "IFP"). D.E. 1, 3.[1] In connection with its evaluation of this request, the court must also examine the viability of Pratt's claims. The court must dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary damages from a party who is immune from such relief. 28 U.S.C. § 1915(e).

    After reviewing Pratt's financial affidavits and her amended Complaint, the court grants her amended application to proceed IFP. D.E. 3.[2] The undersigned further recommends that the district court dismiss a number of the claims in Pratt's Amended Complaint (Am. Compl., Aug. 4, 2016, D.E. 3-2) without prejudice for failing to state a claim upon which relief may be

---

[1] On August 4, 2016, Pratt filed an amended IFP motion along with an Amended Complaint. The Amended Complaint added Defendants Adams, Dawson, and Dixon. D.E. 3-2.

[2] The court referred this matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1).

granted. But the court should allow four of Pratt's claim to move forward: 1) an unreasonable search under the Fourth Amendment, 2) a violation of her substantive and procedural due rights under the Fourteenth Amendment, 3) supervisory liability under Section 1983, and 4) negligence under North Carolina common law.

I.      **Background**

On July 13, 2016, Pratt, proceeding pro se, submitted a Motion to Proceed IFP and a Complaint. D.E. 1, 1-1. Approximately one month later, Pratt filed an Amended Motion to Proceed IFP and an Amended Complaint. D.E. 3, 3-2. Pratt's original Complaint named PCDSS and two of its employees, Retha Albriton and Sofia Ellis, as Defendants. D.E. 1-1. Her Amended Complaint names PCDSS, Albriton, Ellis, and three other PCDSS employees as Defendants: Keisha Adams, Jane Dawson, and Margaret Dixon. D.E. 3-2.

In her Amended Complaint, Pratt alleges that the Defendants conspired to violate her rights and did violate her rights under the Fourth, Sixth, and Fourteenth Amendments to the Constitution in connection with a Child Protective Services ("CPS") investigation and related proceedings in state court. D.E. 3-2, at 2–3. She asserts that the Defendants illegally removed her children from her custody, made false allegations against her, failed to properly investigate the claims against her, and released information without her consent. *See id.* at 3–9. However, she does not give details about or provide documents related to the actual CPS investigation or state court proceedings. *See id.* She seeks $20 million in damages from the Defendants (D.E. 3-1), along with a preliminary injunction, an order requiring the release of all records from the CPS investigation and the state court proceedings, a restraining order against PCDSS, and the return of her children. D.E. 3-2, at 3.

II. Analysis

As mentioned above, the court must determine whether Pratt is allowed to proceed without paying the fees and costs normally associated with civil litigation and whether her Amended Complaint can withstand the review required by 28 U.S.C. § 1915. This court grants Pratt's Amended IFP Motion and will allow her claims to proceed against Adams, Albriton, Dawson, Dixon, and Ellis, in their individual capacities, for unreasonable search under the Fourth Amendment, violations of substantive and procedural due rights under the Fourteenth Amendment, supervisory liability under Section 1983, and negligence under state common law. But the undersigned recommends that the district court dismiss the remaining claims for failing to state a claim upon which relief may be granted.

A. **Application to Proceed in District Court without Prepaying Fees or Costs**

In order to be considered for IFP status, a party must submit an affidavit regarding her monthly income and expenses. Pratt submitted an Amended IFP Motion (D.E. 3) for this purpose. A review of Pratt's Amended IFP Motion reveals that her monthly expenditures are only five dollars less than her monthly income. D.E. 3. The court therefore finds that Pratt lacks sufficient resources to pay the required filing fee and other costs associated with litigation. Accordingly, the court grants Pratt's Amended IFP Motion and allows her to proceed without full prepayment of costs.

B. **Screening Pursuant to 28 U.S.C. § 1915**

After filing her Original Complaint on July 13, 2016, Pratt filed an Amended Complaint on August 4, 2016, which contained additional allegations and parties. Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party is entitled to amend its pleading once as a matter of course within 21 days of service. Fed. R. Civ. P. 15(a)(1)(A). Here, Pratt filed her Amended

Complaint before her original Complaint was served upon Defendants. Therefore, the court will consider the claims in her Amended Complaint.

### C. 28 U.S.C. § 1915 – Failure to State a Claim

The court reviews a complaint to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. Specifically, the court must dismiss any portion of the complaint it determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The only issue in this case is whether Pratt failed to state a claim.

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Pratt's status as a *pro se* party relaxes, but does not eliminate, the requirement that her Amended Complaint contain facially plausible claims. A court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). Pratt alleges that the Defendants violated 42 U.S.C. § 1983, § 1985, and the Fourth, Sixth, and Fourteenth Amendments. *See* D.E. 3-2, at 2. Each of these claims will be examined under the above standard.

### 1. Section 1983 Claims

The Constitution does not provide, by itself, a cause of action to address alleged violations of its provisions; plaintiffs must instead bring their claims of constitutional violations under a statute that provides that cause of action, such as § 1983. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995). Section 1983 creates civil liability for any person acting under the color of state law who deprives an individual "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2001); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (finding that the statute requires a plaintiff to prove both that he was "deprived of a right secured by the Constitution or laws of the United States[] and that the alleged deprivation was committed under color of state law.").

A plaintiff may name local governments and their agents as defendants in a suit under Section 1983. Additionally, plaintiffs can sue officials acting "under color of State law" either "in their official capacity[] or in their personal/individual capacity." *Loughlin v. Vance Cty. Dep't of Soc. Servs.*, No. 5:14-CV-219-FL, 2015 WL 11117120, at *3 (E.D.N.C. Mar. 31, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *McDonald v. Dunning*, 760 F. Supp. 1156, 1160 (E.D. Va. 1991). Because the Amended Complaint does not specify whether Pratt is suing the Defendants in their official or individual capacities, the undersigned will examine both types of claims after first considering the claims against PCDSS.

#### a. Claims against Pitt County Department of Social Services

As a county agency, it is understandable why Pratt believed that PCDSS was susceptible to suit as an entity acting under the color state law. However, a court must first look at whether a named defendant has the capacity to be sued. *See Avery v. Burke Cty.*, 660 F.2d 111, 113 (4th Cir. 1981). For federal courts, capacity is determined "by the law of the state in which the district

court is held." *Id.* at 113–14 (citing Fed. R. Civ. P. 17(b)) (other citations omitted). While Pitt County may be sued, *see* N.C. Gen. Stat. Ann. § 153A-11, PCDSS is a county agency and as such does not have the capacity to be sued, *see Avery*, 660 F.2d at 114; N.C. Gen. Stat. Ann. § 108A-1. As a result, PCDSS should be dismissed as a party.

### b. Claims against Adams, Albriton, Dawson, Dixon, and Ellis in their Official Capacity

"Official capacity suits . . . [are] another way of pleading an action against [the officer's employer]." *Graham*, 473 U.S. at 165 (citation and quotation marks omitted). Thus, Pratt's suit against the Defendants in their official capacity becomes a suit against their governmental employer (i.e. PCDSS or Pitt County). *See id.* at 166. However, as explained before, PCDSS does not have the capacity to be sued. Instead, Pratt should have named Pitt County as a defendant. *See Avery*, 660 F.2d at 114.

But even if she had named Pitt County, this claim should still be dismissed. In order to maintain a § 1983 claim against Pitt County, Pratt must allege that the constitutional violations occurred because of an official "policy or custom" of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Pratt's Amended Complaint does not allege that any of the violations she suffered through were a result of Pitt County's policies or customs. She does allege that CPS supervisors "knew of the case neglect early on and failed to" investigate the workers. *See* D.E. 3-2, at 7. But a government policy is more than "episodic exercises of discretion in the operational details of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). It is the "authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Id.* Consequently, Pratt's Amended Complaint against the individual Defendants in their *official* capacity should be dismissed without prejudice.

### c. Claims against Adams, Albriton, Dawson, Dixon, and Ellis in their Individual Capacity

In contrast to official capacity suits, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. Accordingly, this claim fails if the plaintiff does not allege that the defendant personally took a part in the deprivation of plaintiff's rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Loughlin*, 2015 WL 11117120, at *4 ("These allegations . . . [must show] how [the officials'] performance of [their] jobs resulted in constitutional violations."). Allegations cannot be vague, "conclusory[, or] devoid of factual enhancement." *Loughlin*, 2015 WL 11117120, at *4. After reviewing each of the potential claims in Pratt's Amended Complaint, the undersigned finds that it meets this standard in part and fails it in part.

#### i. Fourth Amendment Unreasonable Search & Seizure

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In her Amended Complaint, Pratt repeatedly asserts that CPS workers violated both her and her children's Fourth Amendment rights not to be subject to an unreasonable seizure. *See* D.E. 3-2, at 2 ("Violation of me and my children's rights when they [were] illegally abducted without probable cause or exigent circumstances which are required under the Warrant Clause of the 14th [sic] Amendment."); *id.* ("CPS did not comply with the 'Warrant Clause'"); *id.* at 6 ("Seperation [sic] of my children has caused a serious infringement upon the rights of the . . . children.").

"Fourth Amendment rights . . . are personal rights [that] may not be vicariously asserted." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2016 (2014) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)) (internal quotation marks omitted). The Federal Rules of Civil Procedure allow

parents to have standing to assert the rights of their children if the state allows such standing. *See* Fed. R. Civ. P. 17(b). North Carolina allows parents to do so only with court approval. *See Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285–86 (4th Cir. 1979). However, the Fourth Circuit held that "non-attorney parents generally may not litigate the claims of their minor children in federal court." *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005). This requirement "ensures the children's interests are not prejudiced by their well-meaning, but legally untrained parents." *Id.* (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir. 1990)). As a result, Pratt can assert the rights of her children only if she is represented by counsel. *See id.* Because she is not, this claim should be dismissed without prejudice.[3]

Pratt next alleges that CPS workers "[e]ntered [her] home when there was no crime committed." D.E. 3-2, at 3. The court construes this allegation as a claim of an unreasonable search of her home. However, "investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context." *Wildauer v. Frederick Cty.*, 993 F.2d 369, 372 (4th Cir. 1993). The Fourth Circuit did not explain what standard a court should use in analyzing such a claim, but it did hold that a "state has a legitimate interest in protecting children from neglect and abuse and in investigating situations that may give rise to such neglect and abuse." *Martin v. Saint Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 506 (4th Cir. 2003). While CPS employees may be justified in entering the home if there had been allegations of child abuse, entering the home without any such indications may constitute an unreasonable search. *See id.* Here, Pratt claims that the CPS workers knew that she was innocent and had not abused

---

[3] This standard equally applies to Pratt's claim that her "[c]hildren['s] Constitutional rights have been violated by not having the right to live with [their] parent." D.E. 3-2, at 6.

her children. If true, then CPS may have lacked a sufficient basis to enter her home. Accordingly, Pratt has alleged sufficient facts to allow her claim of an unreasonable search to proceed forward.

### ii. Fourteenth Amendment Parental Rights

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court held that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Government officials violates this right when their actions are "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Perry v. Pamlico Cty.*, 88 F. Supp. 3d 518, 540 (E.D.N.C. 2015) (applying the shock the conscience standard after *Troxel*). It must be "conduct intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849. The official must act with "deliberate indifference," meaning she had time to deliberate before taking the alleged action. *See id.* at 851. It involves "abusing executive power, or employing it as an instrument of oppression." *Martin*, 346 F.3d at 511 (quoting *Hawkins v. Freeman,* 195 F.3d 732, 742 (4th Cir. 1999) (en banc) (internal quotation marks and alteration omitted) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992)). But, this standard is not met when a CPS official "remove[s] a child in [an] emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Here, Pratt claims that CPS workers removed her children without her permission, sufficient evidence, or a court order.[4] *See* D.E. 3-2, at 3, 5–6.[5] She also makes several specific factual allegations. First, CPS workers threatened to place her children in a dangerous situation if she continued to submit complaints about the workers to their supervisor. *See id.* at 2; *see also id.* at 7 (alleging that CPS threatened to place her children in their grandparents homes despite knowing that one grandpa was a sex offender and that the other was convicted of first degree assault on his wife). Second, Albriton told her that "Ellis should [have] never removed the child from home due to [a] lack of evidence." *Id.* at 5. Third, a CPS Worker (presumably Ms. Ellis) told her that "if you don't remove one child now, we will come back and take both of your children." *Id.* Finally, the CPS workers took these actions despite "kn[owing] of [Pratt's] innocence" and knowing that she "was not a child abuser, [and had] never hurt[ her] child or neglect[ed her] child." *Id.* at 7.

If proven, the use of threats and false accusations to remove children from their home despite a lack of evidence would seem to be sufficient to shock the conscience. *Cf. Martin*, 346 F.3d at 506 (no conscience shocking where mother alleged but could not provide evidence of social worker's misrepresentations to remove her child); *Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009) (finding no conscience shocking actions when social worker "responded to a complaint suggesting the possibility of serious harm and proceeded to investigate and take steps to assure the safety of children that might have been in

---

[4] The Amended Complaint is not clear on when CPS acted without a court order. Earlier in the Amended Complaint, Pratt alleges that "CPS lied to the judge, court petition, and under oath." D.E. 3-2, at 2; *see also id.* at 4, 5, 9 (more court documents).

[5] She makes several allegations: "Illegal continuous removal of my children." D.E. 3-2, at 3. "CPS entry into the home was in violation of the parent's civil rights due to the fact [that] the evidence did not satisfy the removal of the children out [of] the home." *Id.* at 6. "Seperation [sic] of my children has caused a serious infringement upon the rights of the mother." *Id.* "CPS employees . . . kidnapped [my] children without court orders." *Id.* at 5.

danger."). As a result, Pratt's Amended Complaint alleges sufficient facts to make a claim that these CPS Defendants violated her parental rights under the Fourteenth Amendment's Due Process Clause.[6]

### iii. Fourteenth Amendment Procedural Due Process Rights

Pratt alleges multiple times that CPS acted without evidence. *See* D.E. 3-2, at 2 ("4th, 6th, [and] 14th Amendment rights violated due to CPS fabricating false charges without evidence."); *see also id.* at 5–6, 9. The court will construe these allegations as a claim that the Defendants violated her right to procedural due process under the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1.

Due process requires the state to provide a party with "notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Batten v. Gomez*, 324 F.3d 288, 295 (4th Cir. 2003) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). If the situation was an emergency, then due process does not require a hearing prior to the state taking action; it can be postponed until after the emergency is resolved. *See id.* (citing *Jordan by Jordan v. Jackson,* 15 F.3d 333, 342 (4th Cir. 1994)). But the state must provide due process afterward by providing a "prompt 'adequate post-deprivation process to ratify the emergency action.'" *Id.* (quoting *Jordan by Jordan,* 15 F.3d at 342.

In support of her claims, Pratt alleges that the Defendants violated her rights by "illegally abduct[ing] her children without probable cause or exigent circumstances," bringing false charges against her, lying in the state proceedings against her, releasing information to a third-party without her consent, and entering her home without evidence to satisfy removal of her

---

[6] Pratt also alleges that "CPS spoke with my children alone without my consent . . ."; "did not have my legal consent to conduct an[] investigation in a private setting without a parent consent"; and demanded "that me and my children undergo all types of service[s] to justify the[ir] illegal removal of the children." *Id.* at 2–3, 8. These allegations are insufficient as a claim because CPS workers are authorized to perform these tasks. *See Martin*, 346 F.3d at 506.

children from her home. D.E. 3-2 at 2–3, 6. Based upon the allegations contained in the Amended Complaint, the court cannot say with certainty that Pratt received the due process she is entitled to under the Fourteenth Amendment and this claim will be allowed to proceed.

### iv. Supervisory Liability

Under Section 1983, plaintiffs can claim supervisory liability when they "face a pervasive and unreasonable risk of harm from some specified source and the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Carter v. Morris*, 164 F.3d 215, 220–21 (4th Cir. 1999) (ellipsis and brackets omitted) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). Plaintiffs must show "1) actual or constructive knowledge of a risk of constitutional injury; 2) deliberate indifference to that risk; and 3) an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Loughlin*, 2015 WL 11117120, at *5 (internal quotation marks omitted) (quoting *Carter*, 164 F.3d at 221).

Pratt alleged that the "CPS supervisors . . . knew of the case neglect early on and failed to [do] an investigation of [their] workers." D.E. 3-2 at 7. She also alleged that the CPS supervisor "denied [her a] new case worker even though [she] was being retailed [sic] on for reporting [her current] worker to upper management." *Id.* The court will construe these allegations as claims of supervisory liability. As discussed previously, Pratt sufficiently alleged that the CPS workers violated her constitutional parental rights. Thus, if proven true, her allegations would meet the three part standard. So this claim of supervisory liability should not be dismissed at this point of the proceeding.

### 2. Section 1985 Conspiracy Claim

Pratt specifically alleges that CPS "conspire[ed] against [her] rights covered under [§] 1985." D.E. 3-2, at 2. Section 1985 provides that when individuals conspire to deprive an individual of her constitutional rights, that individual may bring suit against the conspirators "for the recovery of damages occasioned by such injury or deprivation." 42 U.S.C. § 1985. The claim will fail "whenever the purported conspiracy is alleged in a merely conclusory manner[ or] in the absence of concrete supporting facts." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). For example, the plaintiff must "allege [the] specific terms of any agreement." *Loughlin*, 2015 WL 11117120, at *7. Here, Pratt claims only that CPS conspired against her. She does not provide any facts to support that claim or to show what agreement the conspirators reached. Accordingly, this claim should be dismissed without prejudice.

### 3. State Law Claims

In addition to her federal claims, Pratt brings several claims that this court will construe as state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and defamation.

For each of these claims this court must determine if Pratt is suing Defendants in their individual or official capacity. *See Isenhour v. Hutto*, 350 N.C. 601, 608, 517 S.E.2d 121, 126 (1999). "In suits against governmental agencies, the complaint must specifically allege a waiver of sovereign immunity[,]" or it is dismissed. *Mandsager v. Univ. of N.C. at Greensboro*, 269 F. Supp. 2d 662, 681 (M.D.N.C. 2003) (citing *Dalenko v. Wake Cty. Dept. of Human Servs,* 157 N.C. App. 49, 55, 578 S.E.2d 599, 603 (2003)). Pratt has not alleged any waiver of sovereign immunity, so the undersigned recommends that the court dismiss without prejudice her claims against Defendants in their official capacity.

After reviewing each of the individual capacity claims below, the undersigned recommends that this court dismiss without prejudice all of the claims, except negligence, for failure to state a claim.

### a. Intentional Infliction of Emotional Distress

In North Carolina, the plaintiff must prove intentional infliction of emotional distress by showing "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Holleman v. Aiken*, 193 N.C. App. 484, 501, 668 S.E.2d 579, 590 (2008) (quoting *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 412–13, 473 S.E.2d 38, 40–41 (1996)). Severe emotional distress requires a showing of "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *See id.* at 501 (quoting *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990)).

Some of Pratt's allegations deal with the suffering of her children. As explained before, Pratt cannot make these claims as a pro se litigant on behalf of her children. *See Myers*, 418 F.3d at 401. So the court will focus only on the Pratt's personal claims of suffering. This court finds that Pratt failed to allege specific facts on the third factor to avoid a dismissal, so the court will not discuss the previous two factors. Pratt repeatedly mentions her emotional suffering. *See* D.E. 3-2, at 4, 6 ("Removal has caused the parent . . . to suffer emotionally.") ("Mother has been emotionally traumatized by CPS workers continuously removing my children with lack of evidence and false accusations."). Yet, she does not specify how she has suffered emotionally, including what kinds of emotional or mental disorders she suffered; so her claim fails and should be dismissed. *See Holleman*, 193 N.C. App. at 501.

### b. Negligent Infliction of Emotional Distress

Similar to its cousin described above, *negligent* infliction of emotional distress requires "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (quoting *Johnson*, 327 N.C. at 304). This claim should be dismissed for the same reasons as described for its cousin: Pratt has stated only the element of the tort (i.e. that she was traumatized) without any facts to show the extent of her suffering or a medical verification of that suffering.

### c. Negligence

To prove negligence in North Carolina, the "plaintiff must show (1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they [sic] were placed[] and (2) that such negligent breach of duty was a proximate cause of the injury." *Id.* (quoting *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984)). While Pratt does not directly claim that Defendants had a duty to her, it can be inferred from her Amended Complaint that she is alleging that the Defendants had a duty to not take away her children without cause. *See, e.g.*, D.E. 3-2, at 5 ("New case worker Retha Albriton said Sofia Ellis *should* [have] never removed the child from home due to *lack of evidence*.") (emphasis added). It is clear that Pratt alleged that Defendants violated their duty to her. *See, e.g.*, *id.*; *id.* at 6 ("[T]he evidence did not satisfy the removal of the children out [of] the home."). And this violation proximately caused her injury: the violation of her fundamental rights as a parent. *See Troxel*, 530 U.S. at 66. As a result, Pratt

can sue the Defendants as public officials (i.e. CPS workers and supervisors) for negligence, and this claim will be allowed to move forward.

### d. Defamation

"In order to recover for defamation in North Carolina, a plaintiff must show that the defendant (1) made false, defamatory statements of or concerning the plaintiff, which were (2) published to a third person, (3) causing injury to the plaintiff's reputation." *Lanier Const. Co. v. City of Clinton, N.C.*, 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011) (citing *Boyce & Isley, PLLC v. Cooper*, 211 N.C. App. 469, 710 S.E.2d 309, 317 (2011)). Here, Pratt has failed to do more than state that she suffered "defamation of character," "slander of [her] name," and being "falsely accused" by CPS workers. D.E. 3-2, at 2, 9. Without factual allegations supporting these claims, Pratt's defamation claim should be dismissed without prejudice.

### e. Additional Claims

Finally, Pratt makes a few more allegations for which the district court would be unable to provide a remedy and so should be dismissed.

She states that the "CPS worker . . . violated [her] privacy by releasing information to a 3rd party without a sign[ed] release form from [her]." *See id.* at 3. However, North Carolina has not recognized a privacy tort that would address her claim. *See Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 815 (M.D.N.C. 2011) (citing *Hall v. Post*, 323 N.C. 259, 269–70, 372 S.E.2d 711, 717 (1988) (refusing to recognize the tort of public disclosure of private facts); *Renwick v. News & Observer Publ'g Co.*, 310 N.C. 312, 326, 312 S.E.2d 405, 413 (1984) (refusing to recognize the tort of false-light invasion of privacy)). So there is no remedy for her claim, and it should be dismissed.

Pratt also claims "CPS employees committed criminal acts." D.E. 3-2, at 5. But "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 (2005) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1508 (2012) (citing Fed. R. Crim. P. 7) (holding that criminal charges cannot move forward without a government attorney's signature). Accordingly, this claim should be dismissed.

## III. Conclusion & Recommendation

For the reasons stated above, Pratt's amended IFP application (D.E. 3) is granted. The court will also allow the following four claims to move forward against Adams, Albriton, Dawson, Dixon, and Ellis, in their individual capacities:

1. A claim for a violation of Pratt's Fourth Amendment right to be free from unreasonable searches;

2. A claim for a violation of Pratt's Fourteenth Amendment substantive and procedural due process rights due to CPS employees' alleged removal of her children under threats, false accusations, and lack of evidence.

3. A claim for supervisory liability under Section 1983 due to Pratt's allegations that CPS supervisors were aware of and ignored the constitutional violations of their employees.

4. A claim for negligence under North Carolina for their actions in connection with the CPS investigation and related proceedings in state court.

Further, the undersigned recommends that the court dismiss the remainder of Pratt's Amended Complaint (D.E. 3-2) without prejudice. Finally, the undersigned orders that the Clerk

of Court change the docket to reflect the following Defendants: Pitt Country Department of Social Services, Keisha Adams, Retha Albriton, Jane Dawson, Margaret Dixon, and Sofia Ellis.

The Clerk is ordered to send a copy of this Memorandum and Recommendation to Pratt. She shall have until 14 days after service of the Memorandum and Recommendation to file written objections. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If Pratt does not file written objections to the Memorandum and Recommendation by the foregoing deadline, she will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, her failure to file written objections by the foregoing deadline will bar her from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: October 24, 2016

*Robert T. Numbers II*
_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE